The Honorable Barbara J. Rothstein

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

BAOXIN QU,

Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

Defendant.

NO. 25-cv-381-BJR

**ORDER REVERSING AND REMANDING FOR THE AWARD OF BENEFITS**

## I. INTRODUCTION

Plaintiff seeks review of the denial of his application for Supplemental Security Income under Title XVI of the Social Security Act. Previously, in August 2023, this Court reversed the Commissioner's final decision and remanded the matter for further administrative proceedings. *See Order*, ECF No. 13, in 3:23-cv-5206-RSM. A hearing was held on October 8, 2024, and on December 13, 2024, the Administrative Law Judge ("ALJ") issued his written decision, finding that Plaintiff is not disabled. AR 399-416, ECF No. 6.[1] Having reviewed the administrative record ("AR"); Plaintiff's Opening Brief, ECF No.8; the Commissioner's response, ECF No. 13, and the

[1] The administrative record ("AR") was filed as a single document at ECF No. 6. For ease of reference, the Court will cite to the AR page numbers provided in the lower right-hand corner of each page.

relevant legal authorities, the Court will reverse the Commissioner and remand for the purpose of awarding benefits. The reasoning for the Court's decision follows.

## II. BACKGROUND

### A. Factual Background

Plaintiff, Baoxin Qu, was born on March 23, 1989, he has a high school education, and he has never worked. AR 414. Plaintiff has "treatment-resistive depression and has been prescribed, and is now engaged in, ECT therapy, formally known as electro-shock therapy," which started in September 2024. AR 429-30. He has been diagnosed with agoraphobia, and with panic attacks and generalized anxiety disorder and cannot leave home unless accompanied by his younger brother. *Id.* Plaintiff testified that his conditions have been getting worse since none of the various treatment efforts have worked to date and the ECT treatments, which are three times a week, have side effects of confusion, fatigue, and headaches. *Id.* at 432-41.

### B. Procedural Background

In April 2020, Plaintiff applied for benefits, alleging disability. AR 15, 64-65, 73. The application was denied initially and on reconsideration, a hearing was conducted in September 2021, and the ALJ issued a decision finding that Plaintiff was not disabled. AR 12-31. Upon review of the denial, the Court reversed the Commissioner's final decision and remanded for further administrative proceedings. *See Order*, ECF No. 13, in 3:23-cv-5206-RSM. On remand, a hearing was held, and the ALJ again found that Plaintiff was not disabled since April 23, 2020, the date the application was filed. AR 399-416.

### C. The ALJ's Decision

Using the five-step disability evaluation process, 20 CFR §§ 404.1520, 416.920, the ALJ found the following at each sequential step.

#### 1. Step one

At step one, the ALJ determines whether the claimant is currently engaging in substantial gainful activity. Here, the ALJ found that Plaintiff had not engaged in substantial gainful activity since April 23, 2020 (the application date), and he proceeded to step two. AR 401.

#### 2. Step two

At step two, the ALJ determines whether the claimant has a "severe" medically determinable impairment. The ALJ found that Plaintiff has the following severe impairments: social anxiety disorder; generalized anxiety disorder; and major depressive disorder. AR 402. Plaintiff was diagnosed with agoraphobia with panic attacks by an advanced practice nurse practitioner, and allegations of a learning disability/disorder has no formal diagnosis, so they were both considered not medically determinable, but the ALJ considered Plaintiff's additional psychological symptoms and their effect "regardless of the diagnostic label attached." *Id.* at 402-03.

#### 3. Step three

At step three, the ALJ determines if the impairment meets or is medically equal to one of the listings in the Social Security Administration ("SSA") regulations. The ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926). AR 403. Specifically, the ALJ stated that "[t]he severity of the

claimant's mental impairments, considered singly and in combination, do not meet or medically equal the criteria of listings 12.04 and 12.06." *Id.*

**Residual Functional Capacity ("RFC")**

If the ALJ finds that a claimant does not meet or equal a medical listing at step three, the ALJ must transition from purely clinical evaluations to functional evaluations. *See Laborin v. Berryhill*, 867 F.3d 1151, 1153 (9th Cir. 2017) ("The ALJ assesses a claimant's RFC between steps three and four of the five-step sequential evaluation process used for disability determinations."). The ALJ compiles medical opinions, subjective testimony, and daily activities to map out the baseline of what the claimant can do in an 8-hour workday despite their impairments. Here, the ALJ found that Plaintiff

> has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: he can only understand, remember, and apply detailed, but not complex, instructions while performing predictable tasks, not in a fast paced production type environment, while being exposed to only occasional workplace changes. He can have no interaction with the general public and only occasional interaction with coworkers.

AR 405.

**4. Step four**

At step four, the ALJ determines whether the claimant's RFC allows them to perform past relevant work. Plaintiff has no past relevant work. AR 414.

**5. Step five**

If the claimant is unable to do any past relevant work or does not have any past relevant work, the analysis proceeds to the fifth and last step. At step five, the ALJ determines whether the

claimant can perform any other work existing in significant numbers in the national economy, considering their RFC, age, education, and work experience. The ALJ concluded that Plaintiff is capable of making a successful adjustment to jobs that exist in significant numbers in the national economy. AR 414-15.

## III. LEGAL STANDARD

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits if the ALJ's decision was based on legal error or not supported by substantial evidence in the record. *Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020). "Substantial evidence" is more than a scintilla, less than a preponderance, and is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019)).

Although the burden of proof is on the claimant as to steps one to four of the evaluation process, the ALJ also shares the burden, having an affirmative duty to assist a claimant to develop the record. *Tackett v. Apfel*, 180 F.3d 1094, 1098, n.3 (9th Cir. 1999). The ALJ is responsible for evaluating evidence, in part by resolving conflicts in medical testimony and other contradictions and ambiguities in the record. *See Ford*, 950 F.3d at 1149 (citing *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). Where evidence is susceptible to more than one interpretation, the ALJ's interpretation must be upheld if it is rational. *See id.* at 1154; *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

Finally, a court "may not reverse an ALJ's decision on account of a harmless error." *Buck v. Berryhill*, 869 F.3d 1040, 1048 (9th Cir. 2017) (citing *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012), *superseded on other grounds by* 20 CFR § 404.1520c(c)(2)). "ALJ errors in social

security are harmless if they are 'inconsequential to the ultimate nondisability determination'". *Marsh v. Colvin*, 792 F.3d 1170, 1173 (9th Cir. 2015) (quoting *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055–56 (9th Cir. 2006)). But where an ALJ did not consider certain competent evidence at all, a reviewing court "cannot consider the error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." *Id.*

## IV. DISCUSSION

Plaintiff contends that the ALJ made three errors: (1) at step three, the ALJ erred in finding that Plaintiff did not have an "extreme" limitation with regard to interacting with others; (2) the ALJ failed to provide specific, clear and convincing reasons for rejecting the Plaintiff's subjective complaints; and (3) the ALJ erred in rejecting the statement submitted by Plaintiff's brother. Opening Br. 1. Because the Court agrees that the ALJ erred at step three, it does not address the other alleged errors.

At step three, a claimant can establish disability if he proves that his impairments meet or medically equal a listed impairment in 20 CFR Part 404, Subpart P. Appendix 1. "To meet a listed impairment, a claimant must establish that he or she meets each characteristic of a listed impairment relevant to his or her claim. To equal a listed impairment, a claimant must establish symptoms, signs and laboratory findings at least equal in severity and duration to the characteristics of a relevant listed impairment . . ." *Tackett*, 180 F.3d at 1099.

Mental disorders are arranged in listings, which includes the two listings identified by the ALJ: 12.04 (depressive, bipolar, and related disorders; and 12.06 (anxiety and obsessive-compulsive disorders). 20 CFR Part 404, Subpart P. Appendix 1. Listings for a mental disorder

must satisfy the requirements of both paragraphs A and B.[2] *Id.* Paragraph A of each listing includes the medical criteria that must be present in the medical evidence; and paragraph B provides functional criteria assessed in conjunction with a rating scale to evaluate how the mental disorder limits functioning. *Id.*

In making his finding, the ALJ considered whether Plaintiff's mental impairments satisfied the paragraph B criteria, i.e., the specific functional criteria used to evaluate mental health disorders. AR 403. An ALJ evaluates a claimant's mental functioning in four categories, and scores each on a scale of "no" limitation, "mild" limitation, "moderate" limitation, "marked" limitation, or "extreme" limitation. *See* 20 CFR § 404.1520a. The four categories are: (1) understand, remember, or apply information; (2) interact with others; (3) concentrate, persist, or maintain pace; and (4) adapt or manage oneself. *Id.* To satisfy the paragraph B criteria, the mental impairments must result in "extreme" limitation of one, or "marked" limitation of two, of the four categories of mental functioning. 20 CFR § Part 404, Subpart P, Appendix 1 § 12.00(E). A rating of extreme "represents a degree of limitation that is incompatible with the ability to do any gainful activity." 20 CFR § 404.1520a.

The ALJ rated Plaintiff as having a moderate limitation in three of the four categories, and in "interacting with others," Plaintiff was rated as having a marked limitation. AR 403-04. Plaintiff contends that the ALJ erred in not finding that he has an extreme limitation regarding his interacting with others, emphasizing that he is "completely unable to function in a public setting without direct support from his brother." Opening Br. 3. As such, Plaintiff asserts that the limitation precludes any

---

[2] The Court notes that it may also be possible to satisfy the requirements of both paragraph A and a paragraph C, but Plaintiff makes no arguments related to paragraph C criteria, and according to the ALJ, the evidence failed to establish the presence of paragraph C criteria. AR 404

form of gainful employment. *Id.* He argues that the record establishes that he unable to go out on his own, needs his brother to accompany him everywhere he goes, and he is unable to interact with others except when his brother is present or in a stress-reduced treatment environment. *Id.* at 4.

"An ALJ must evaluate the relevant evidence before concluding that a claimant's impairments do not meet or equal a listed impairment." *Lewis v. Apfel*, 236 F.3d 503, 512 (9th Cir. 2001). The ALJ must consider every medical opinion in the record and evaluate each opinion's persuasiveness, with the two most important factors being "supportability" and "consistency." *Woods v. Kijakazi*, 32 F.4th 785, 791 (9th Cir. 2022); 20 CFR § 416.920c(a). Here, the ALJ acknowledged Plaintiff's testimony about having significant limitations, a hard time talking to people, panic attacks, and difficulty leaving the house. AR 403. The ALJ stated that Plaintiff "does not leave the house much, and does not go out on his own. His brother takes him where he needs to go." *Id.* But the ALJ discounts the overall limitation to "marked" rather than "extreme," largely based on isolated comments in the medical evidence stating that Plaintiff had normal behavior and was cooperative with his treatment providers. Under the ALJ's review of the evidence regarding Plaintiff's ability to interact with others, he noted the following comments as examples of why Plaintiff does not have an extreme limitation in interacting with others:

- "[H]e had normal behavior and he was interactive." AR at 403-04 (citing Exhibit 4F, AR 335-39). This exhibit represents a February 2021 Psychological/Psychiatric Evaluation performed over the telephone by Dr. Alysa Ruddell. Overall, the ALJ found Dr. Ruddell's and Ms. Mitchell's opinions not persuasive, in part because DSHS evaluations have different criteria from Social Security evaluations, and in part because the examination was limited and he determined that it was not consistent with the overall record. AR 411-12.
    - However, in addition to the comment noted by the ALJ, Dr. Ruddell provided a diagnosis of Generalized Anxiety Disorder, which also included the comment, "unable to go out alone." In rating basic work activities, although she provided no "severe" ratings, and an overall severity rating of 4 (marked), she also noted that Plaintiff's feelings of anxiety or panic are "all

the time," and paranoia makes him "always" avoid people and going out. Melanie Edwards Mitchell, Psy.D., from DSHS reviewed Dr. Ruddell's findings and indicated that the functional limitations were supported by the available evidence. Exhibit 9F, AR 697-98.

- "[He] was also noted to be cooperative and open with normal speech." AR 404 (referencing Exhibit 2F, AR 322-26). Here, the ALJ references a comment in a Mental Status Examination Report by Dr. Lindman, who conducted a video examination in July 2020. The ALJ found Dr. Lindman's opinion partially persuasive. AR 412.

    - In the same exhibit, Dr. Lindman also reported that Plaintiff was very reserved, made poor eye contact, and was nervous. Under psychiatric history, Dr. Lindman reported that Plaintiff's self-stated symptoms included nervousness around others and outside, having a difficult time socially, and "[w]hen he goes out, it is with his brother and 'that's it.'" She noted no evidence of malingering. Dr. Lindman indicated that Plaintiff takes medication, which helps with his sleep and somewhat with his anxiety, "although he still does not go outside." She provided a diagnosis of Unspecified Learning Disorder and Social Phobia. The Court also notes that in his finding that Dr. Lindman's opinion was partially persuasive, the ALJ felt compelled to add that the "claimant is somewhat further limited in interacting with others than found by Dr. Lindman, with records showing the claimant consistently reported difficulty leaving his house, panic attacks, and problems interacting with others."

- "He had downcast eye contact and a flat affect, but was cooperative and engaged." AR 404 (citing Exhibit 11F, AR 745-49). This exhibit is a January 2023 Psychological/Psychiatric Evaluation performed by Rebecca Skelly, ARNP based on a review of records from October 2021 to December 2022, and an in-person exam on December 30, 2022. Overall, the ALJ found Ms. Skelly's opinion not persuasive because she had only examined Plaintiff on a limited basis, was not able to review the records in their entirety, she did not provide detailed explanations, and the DSHS criteria differs from Social Security determinations. AR 411-12.

    - In the same evaluation, Ms. Skelly noted under "appearance," that "[h]is eye contact is shifty and downcast. He appears fidgety and restless while he bobs his knee and wrings his hands," and his mood was depressed and anxious. She listed his diagnoses as: "Major depressive disorder, recurrent, severe, without psychotic features; Obsessive compulsive disorder; Generalized anxiety disorder; Panic disorder; Avoidant personality disorder." She rated all but 3 of 13 basic work activities as "severe" and provided an overall severity rating of "severe." Under prognosis, she added: "The severity of his mental health symptoms, as well as his learning disability, are Mr. Qu's largest barriers to employment."

- "He was able to go out to eat with his brother, which he reported he enjoyed." AR 404 (citing Exhibit 10F, AR 699-744). This exhibit includes 46 pages of telehealth therapy progress notes from October 2021 to September 2022.
    - This statement takes on a different import when considered in context. The context for the statement is as follows: in February 2022, a therapy goal was set to "continue to create things that gives [Plaintiff] a reason to get out of the house and do something;" in March 2022, the therapist commented that Plaintiff "was able to go out with his brother and get Dim Sum and enjoyed his experience overall, but day to day functioning is getting worse." The Court observes that in July 2022, therapy notes also included suggestions to "try[] to take a few seconds or minutes outside without thinking about it ahead of time and maybe working toward getting the mail from the mailbox," and "staying outside with dog for extra 10 seconds."
- "His therapy records consistently showed that his appearance, behavior, speech, mood, and affect all remained within normal limits" AR 404 (citing Exhibit 10F/3-26, described above).
    - Here, the ALJ refers to the therapy progress notes initial checklist which indicate "WNL" (i.e., Within Normal Limits) for appearance, behavior, speech, etc. during the telehealth session. The Court observes that this checkmark, in a telehealth session while Plaintiff was in his own home, is not an indicator of Plaintiff's ability to interact in a work environment, nor a rating of his anxiety, agoraphobia, or panic attacks, which would impact his ability to go out to a work environment.
- "He was well groomed and cooperative." AR 404 (citing Exhibit 14F, AR 756-810). This exhibit includes an initial in-person evaluation followed by video visit progress notes from March to September 2024 for medication management.
    - The comment on his appearance during the initial evaluation was followed by: "Attitude & behavior: Cooperative, reserved, downcast gaze with very poor eye contact, appeared tense and fidgeted with hands during entire interview." "Mood: depressed, anxious. Affect: Restricted, anxious, congruent." Plaintiff was diagnosed as "severe symptomology" with "Severe episode of recurrent major depressive disorder, without psychotic features; Generalized Anxiety Disorder; Agoraphobia with panic attacks." Additionally, issues were noted regarding Plaintiff's brother having to take time off work to take Plaintiff to appointments. "Given his extensive history of failed medication trials and severity of current symptoms, agree with recommendation to trial TMS or ECT. Transportation to appointments may be a barrier to engaging in treatment." It was also noted that certain treatments were "not feasible due to the high frequency of visits and needing rides from his brother."

- The ALJ also commented that Plaintiff does leave the house at times and takes Clonazepam when he does. AR 404 (citing Exhibit 14F, described above).
    - The Court notes that the progress notes on Plaintiff's medication management state: "Takes clonazepam 1 mg when he has to leave the house which is a few times a month. States this used to be more helpful. Has been taking clonazepam for over a year. Panic attacks sometimes occur at home when worries increase. This occurs a few times a week." In the context of Plaintiff only leaving the house accompanied by his brother, this medication note does not actually support the ALJ's observation regarding Plaintiff's ability to go out.
- "He reported no problems getting along with others." AR 404 (citing Exhibit 3E, AR 248-55). This exhibit is Plaintiff's Function Report, which he completed May 6, 2020.
    - Plaintiff responded to the question: "Do you have any problems getting along with family, friends, neighbors, or others?" He answered no, but he then explained "I avoid other people." He also explained that he walks around with his dogs in the back yard, but his brother drives him everywhere else.

As the Court has noted above, the evidence that the ALJ highlighted as supporting his conclusion are isolated excerpts from the record as a whole. The ALJ improperly equated clinical cooperation, primarily in telephone and video encounters while Plaintiff was in his own home, with workplace functionality. His ability to answer questions and be attentive during a highly structured medical appointment does not translate to the ability to sustain competitive work interactions on a full-time basis. As Plaintiff observed, a relatively normal encounter during a mental status examination is not representative of the Plaintiff's capacity outside of the treatment provider's office, "particularly as due to the very nature of Plaintiff's limitations, a reasonable mind would expect the Plaintiff to feel much better during a short period in a safe, cocooned environment than for an 8-hour workday with regular work stressors." Opening Br. 5. "[A]wareness that improved functioning while being treated and while limiting environmental stressors does not always mean

that a claimant can function effectively in a workplace." *Garrison v. Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014).

Additionally, the ALJ mischaracterized accommodated activities, such as a single report of Plaintiff going out to eat with his brother, or being able to go out by taking medication, but the ALJ then ignored the follow-on statements that he goes out only a few times a month, only with his brother, and that he has started having panic attacks at home a few times a week. Importantly, the record is uncontradicted that Plaintiff cannot leave the house alone, and he requires his brother to transport him everywhere. These limitations do not constitute the ability to function "independently, appropriately, effectively, and on a sustained basis" under Social Security regulations, and as such, they represent an "extreme" limitation in interacting with others.

The ALJ discussed additional evidence as he continued his analysis to map out Plaintiff's residual functional capacity, i.e. what Plaintiff can do in an 8-hour workday despite his impairments. Although this analysis has a different focus, it is also relevant to the ALJ's findings regarding Plaintiff's limitations interacting with others. The Court observes that the ALJ thoroughly examined and detailed all the medical evidence of record in his decision overall. The following summarizes the additional relevant evidence:

- The ALJ made only one comment regarding Dr. Widlan's psychological evaluation: "The claimant was observed to be agitated with minimal eye contact." AR 403 (citing Exhibit 5F, AR 340-44). Dr. Widlan conducted an in-person evaluation on March 29, 2021, and he reviewed earlier records. The ALJ found Dr. Widlan's opinion was not persuasive, as he did not provide support for his findings, was only able to evaluate Plaintiff on a limited basis and was not able to review the evidence of record in its entirety. AR 413. The ALJ stated that Dr. Widlan's opinion is not consistent with the overall record. *Id.*
    - The Court observes, however, that Dr. Widlan's is one of the few opinions that included an in-person evaluation, and his opinion is consistent with other in-person evaluator's opinions, such as Dr. Peralta and Lilian Peng. Dr. Widlan opines that Plaintiff suffers from Social Anxiety Disorder, Major

Depressive Disorder, Panic Disorder, Specific Learning Disability, and Avoidant Personality Disorder. He states that Plaintiff "cannot negotiate simple social stressors on a consistent and routine basis due to social anxiety and characterological dysfunction." This is Dr. Widlan's prognosis:

> Baoxin suffers from chronic severe anxiety, which has led to long-term avoidant behaviors. He does not leave his residence unless he has to and never by himself. He has always been reliant on family to take him places. He gets easily overwhelmed and is prone to agitation. He experiences panic attacks during which he has difficulty breathing. He has trouble thinking. He feels agitated and overwhelmed. He described significant dysphoria, lack of energy, lack of motivation, and anhedonia. He reported a long history of difficulties learning information and has a history of special education involvement. His symptoms are long-term in nature.

- The ALJ also considered Dr. Peralta's August 2021 medical opinion, Exhibit 7F, AR 360-61. Dr. Peralta, Plaintiff's primary care provider, completed a questionnaire and opined that Plaintiff's anxiety and panic episodes would result in daily absenteeism. The ALJ found Dr. Peralta's opinion not persuasive and inconsistent with the overall record, stating "Dr. Peralta provided some support for these findings, noting the claimant's anxiety and panic attacks (Exhibit 7F). However, he did not provide a detailed explanation and only broadly cited to anxiety and panic episodes." AR 413. The ALJ indicated that the Dr. Peralta's findings were not consistent with his treatment notes. *Id.*

    - The Court reviewed Dr. Peralta's treatment notes (Exhibit 6F, AR 345-59), which include annual physical examinations as well as visits for anxiety treatment. The Court observes that treatment notes during a physical examination indicating that "Patient is alert and oriented to person, place, and time" and "appears well-developed and well-nourished" are not inconsistent with Dr. Peralta's opinion that Plaintiff's panic episodes would result in daily absenteeism. Treatment notes also included statements such as: "He has been dealing with anxiety for a long time. He is not working and he stays at home most of the time. He gets panic attacks when he goes out of the house. He only goes out about 3-4x a month."

- The ALJ reviewed the State agency psychological consultant's report prepared by Dr. Reade, affirmed on reconsideration by Dr. Fitterer. Exhibits 2A, AR 64-72, and 3A, AR 73-82. Dr. Read found Plaintiff had severe "Anxiety and Obsessive-Compulsive Disorders" and rated "interact with others" as a moderate limitation. The ALJ found these prior administrative findings partially persuasive and partially

consistent with the overall record. AR 410-11. The ALJ noted that the consultants had the opportunity to review the available records and are familiar with social security criteria.

- However, in discussing this report, the ALJ added his own observation that the record also shows that Plaintiff is limited in interacting and can have no interaction with the general public and only occasional interaction with coworkers. *Id.*

- The ALJ commented on Lilia Peng, ARNP, treatment provider, who "opined that the claimant's impairments would interfere with his ability to work on a regular and sustained basis at least 20 percent of the time, he would miss work 18 days per month, and she did not believe he could work on a regular and sustained basis. AR 414 (citing Exhibit 12F, AR 750-53). The ALJ found Ms. Peng's opinion not persuasive and inconsistent with the overall record. *Id.* He also found that Ms. Peng's opinion was inconsistent with her treatment records. *Id.* (citing Exhibit 14F, AR 756-810).

  - The Court reviewed the referenced treatment records, which indicate Plaintiff's history of depression and agoraphobia with panic attacks. She notes symptoms of panic attacks whenever leaving the house, feeling of being a burden to his younger brother who has to take him to his appointments. Her comments on attitude and behavior as "Cooperative, reserved," as noted by the ALJ, are followed by "downcast gaze, with very poor eye contact, appeared tense and fidgeted with hands during entire interview." The treatment notes are consistent with her opinion that Plaintiff's impairments would interfere with his ability to work.

- The ALJ considered Plaintiff's brother's statement, Exhibit 4E, AR 256-63, and Exhibit 12E, AR 297-98. Plaintiff's brother reported that Plaintiff has issues interacting with others that had been getting worse over time, and Plaintiff does not leave the house unless his brother takes him out. The ALJ found that nevertheless, "the residual functional capacity appropriately accommodates the claimant's impairments based on the evidence as a whole." AR 410.

  - The ALJ does not explain how Plaintiff's inability to go out of the house without his brother would allow Plaintiff to pursue gainful activity. Again, the record is uncontradicted that Plaintiff cannot leave the house alone, and he requires his brother to transport him everywhere.

Considering the entire record, the Court concludes that the ALJ's step three paragraph B finding—that Plaintiff did not have an "extreme" limitation with regard to interacting with others—is not supported by substantial evidence. The ALJ erred by failing to find that Plaintiff possesses

an "extreme" limitation in interacting with others under Listings 12.04 and 12.06. The ALJ explicitly acknowledged that Plaintiff suffers from severe panic attacks, paranoid thought content, agitation, and a total inability to leave the house without his brother. These are severe manifestations of Listing 12.06 (social anxiety disorder, panic disorder, generalized anxiety disorder, agoraphobia, and obsessive-compulsive disorder), which renders him entirely unable to function in a work environment on an independent and sustained basis.

The record contains substantial evidence to satisfy Plaintiff's burden of proof to show that he has an impairment or combination of impairments that meets or medically equals the severity of a listed impairment in 20 CFR Part 404, Subpart P, Appendix 1, and he is entitled to benefits. *See Garrison*, 759 F.3d at 1019-20 (discussing the credit-as-true rule entitling a claimant to an immediate award of benefits when there is no reason to believe that he is not disabled); *Trevizo v. Berryhill*, 871 F.3d 664, 682 (9th Cir. 2017) ("The decision whether to remand a case for additional evidence, or simply to award benefits[,] is within the discretion of the court.").

Under the credit-as-true rule, "a rare and prophylactic exception of the ordinary remand rule," the Court may order an immediate award of disability benefits if three conditions are met: (1) "the ALJ failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion," (2) there are no outstanding issues that must be resolved before a disability determination can be made and further administrative proceedings would serve no useful purpose, and (3) when considering the record as a whole and crediting the improperly discounted testimony as true, there is no doubt as to disability. *Leon v. Berryhill*, 880 F.3d 1041, 1045 (9th Cir. 2017) (citations omitted). The Court concludes that the conditions of the credit-as-true rule have been satisfied; there is no useful purpose to be served by further development of the record; the ALJ failed in his analysis at step three in the disability evaluation process; and properly crediting

the evidence in the record, an ALJ would be required to find Plaintiff has a listed impairment. Based on the Court's review of the record, there is no basis for serious doubt that Plaintiff is disabled.

## V. CONCLUSION

For the foregoing reasons:

1. The Court finds that substantial evidence and applicable law do not support the ALJ's conclusion;

2. It is ordered that the Commissioner's decision is reversed, and this matter is remanded to the Commissioner under sentence four of 42 U.S.C. § 405(g) for the sole purpose of awarding benefits;

3. Judgment will be entered by separate Order.

DATED this 30th day of July 2026.



Barbara Jacobs Rothstein
United States District Judge